Healy, Healy, Healy. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Good morning. This is Beverly Martin. We have been looking forward to being with you today and appreciate you being available in this way. This is the fourth day of oral argument for this panel and I think it's gone pretty well. We have a little bit of problem with people not hearing the questions, but I wonder sometimes if they're just questions they don't want to hear. So Judge Newsom and Judge Julie Carnes are both on the line and it's been a pleasure to sit with both of them. It's hard for me to refer to Judge Julie Carnes as a senior judge, but she just took that status and I think all of you all know that means she doesn't have to be here to do this work. So we really appreciate you being with us, Judge Carnes. With that, we will get underway with the first case. It's the United States of America v. Roosevelt Coats. And Ms. Gaddis will call the time limit. And I'm reminding myself that we promised you two minutes of uninterrupted argument to begin. So Mr. Dodson? Good morning. Jonathan Dodson for Roosevelt Coats. And may it please the court, I raised three issues in my briefs and intend to begin today with the rehafe issue, then address the ACCA issue, and finally touch on the acceptance of responsibility issue. As to the rehafe issue, this court held in Gaddis v. Linehan that due process requires at a minimum that the defendant understand the critical elements of the charges they are pleading guilty to. And in rehafe, the Supreme Court characterized knowledge of prohibited status as the crucial element, crucial because it's what separates innocent from lawful conduct. Similarly, in Henderson v. Morgan, the Supreme Court said that intent to kill element of second-degree murder was critical. So when no one explained that element to the defendant, he was entitled to withdraw his plea. Importantly, in that case, the court said we can assume that he would have pleaded guilty anyways, and we can assume that the evidence was overwhelming of his intent to kill, but nonetheless there was no substitute for his voluntary admission or a finding after trial that he intended to kill. So the kind of things that we are normally looking at when we do a prejudice analysis are not relevant to this particular kind of due process violation. And in modern parlance, we will call that structural error, as the Fourth Circuit did in the United States v. Gary, which I mentioned in my 28J letter. The most important reason it's structural is because it implicates the defendant's fundamental right to decide for himself whether to admit or deny charged conduct. And that's an interest that the Supreme Court has recognized in the structural error context, most recently in McCoy v. Louisiana, where the lawyer admitted guilt over the defendant's objection as part of a strategy to avoid the death penalty. And the court said, even if this was a wise strategy, it infringed upon a fundamental choice that only the defendant gets to make. So it doesn't matter if it increases the likelihood of an erroneous conviction, it's something that transcends that normal, harmless error interest that we're looking at. Mr. Dodson, this is Judge Newsom, and I think we're at about the two-minute mark. And this is this Rahafe issue is interesting and important, so I want to ask you a quick question. So how do you distinguish the challenge here from what I'll call a more run-of-the-mill Rule 11 challenge? Because, you know, we've had lots of these cases post-Rahafe in the Rule 11 context where, you know, we say, look, from the record, it's clear this guy knew he was a felon. And I don't really think you'd dispute that your guy knew he was a felon. But you'd say, well, this is different because I'm making a constitutional challenge, which I understand. But what's to prevent every other post-Rahafe petitioner going forward from just saying, oh, no, no, no, who said anything about Rule 11? I'm arguing a due process challenge. Well, I don't know that anything would prevent a Rahafe petitioner who pleads guilty like this one did with a record. And it's still a totality of the circumstances analysis in deciding whether there's an error. But in a case like this, it's sort of like Fousley where it's very clear that no one knew what these elements were. And, in fact, the elements were misstated to Mr. Coates during the plea colony by both the prosecutor and defense counsel. So there could be unusual cases where someone informed the defendant of that element, even though it really wasn't an element yet. But in this case, I think it's on all fours with Fousley. And it really doesn't matter if he's intelligent or if the charge is particularly complex because simply no one knew about this issue. Just so I'm clear, I mean, it sounds like, for the most part, you think that everybody who comes up post-Rahafe is going to have the – you know, there may be marginal candidates who don't for some reason that I can't quite figure out. But everybody will have the same claim that your client does. Nobody will have to prove prejudice. And everybody will sort of pass through the plain error needle. I think so. For those who raised the due process claim, I think that the vast majority would have this issue. I think it's particularly clear on this record just based on the way that the parties discussed the elements very clearly. So it's more than the omission of an element. It's the affirmatively misstating those elements to him. That may be one distinction that you could draw. But other than that, yes, I agree. I think it would be pretty broadly applicable. So based on Henderson and on Bousley and on the modern structural error cases, I think that this particular type of due process violation is reversible without regard to the normal prejudice analysis. This is Judge Barnes. Let me ask you a question. We've had several cases now come down, and as my accounting knows, the fourth circuit is the only circuit that treated this error as structural. As I can see it, four other circuits apply the traditional plain error review. The first, the second, the sixth, the seventh, the eighth. And, in fact, our own court in the Reed case, it's not a guilty plea. It was a trial scenario. But we also did not apply structural error. We applied a plain error test. What principle ground do we have if we determine that this kind of error at a trial is not structural error but it can be analyzed based on the traditional plain error test? How does that kind of issue suddenly morph into a structural error just because it happens to be in a guilty plea context? I think that Reed-Hafe raises a number of different types of issues. And as best I can tell from this court's Moore and Reed opinions and from the other circuits' opinions, the parties simply didn't raise a due process claim. A sufficiency of the evidence claim or a jury instruction claim is sort of a classic trial error because it can be measured against the trial record to determine prejudice. But here the harm is different than that type of prejudice. It's just that Mr. Coates was the issue that I've raised is that he wasn't able to make a choice for himself, and we would be imputing this guilty plea an admission that he did not voluntarily make. Why can't we measure this like we do any other sort of issue in a Rule 11 context, whether the likelihood he would plead? As I see it, structural error is a very, very near exception, occurring only with things that absolutely can't be measured. You don't have a lawyer at trial, so how can we determine what would have happened? This case seems to me very easily measurable in that we know full well, with almost 100% certainty, what would have happened. If your client had been told one of the elements is he has to know he had a felony conviction, we know that he knows he'd lose on a jury trial because sitting there amidst his many other felony convictions is a conviction for felon in possession of a gun. So there can be no doubt, no doubt, in my mind, that he would have still pled guilty because otherwise, let's play this through how it would go at trial. The government would put up every felony conviction he had to show how many he had, including this last one. Not something that I think your client would like or would be helpful. I can't see any way he would not plead, given his record. And that's the kind of analysis all the other circuit courts have been doing. And I agree that structural error is narrow, but one thing that the Weaver opinion made clear is that it's not only that it may be immeasurable. Sometimes there are structural errors because the nature of the right goes to some interest that transcends what we would normally be considering when we're doing a harmlessness or a harmfulness analysis. And this is exactly that kind of interest, one that the Supreme Court has recognized a couple of times as an interest that makes an error structural, his interest in deciding for himself whether to admit or try charged conduct. And it may be measurable, but it still serves this other interest, and I think that's a separate grounds for finding that this error is structural. I want to touch on the acceptance of responsibility just to say that the facts there are undisputed, underlying the court's denial of acceptance, that the court's decision was based entirely on its interpretation of 3E11. So I would say that the standard review for that interpretation is de novo, and under either of the approaches of the other circuits, Mr. Coase should have gotten acceptance of responsibility. And then finally, as to the ACCA issue, this court decided Borzacus last year, and I think that puts to rest the government's primary argument on this point, which is that this court doesn't have to consider Georgia party to a crime. The court rejected that argument in the context of Washington aiding and abetting, and Georgia law works the same way. It's implicit in every offense. Can I ask you a quick question, because this is important to me before your time runs out? So picking up on what you just said, if the Georgia party to crime statute or concerned end statute, whatever we're going to call it, is implicit in every crime, and you say provides for liability, criminal liability that is broader than federal aiding and abetting, does that mean that no Georgia crime can be an ACCA predicate? I can suggest one limiting factor, and I realize it is another issue with pretty broad implications, but in this case we have Shepard documents that indicate that party to a crime was actually in the indictment. It was possibly a ground for liability, and not every case will be that. In some cases it would be entirely relying on the implicit nature, but here there's some explicit indication that there might have been a party to a crime theory as a basis for his conviction. And I think the majority of cases may not have that, so you could leave that part of the issue for another day and decide it on more narrower grounds. I only have a few seconds. I just want to emphasize a few cases that actually applied it over broadly, and those are Shockley v. State and Cash v. State, and I think they show both that there's not a mens rea that extends to the specific offense and that Georgia doesn't always require an affirmative act. They posit an exception to the affirmative act when circumstantial evidence proves intent, but we know we have to have both of those. You said Shockley. What was the second case you said? Cash v. State. Cash v. State. I've read a lot of these cases, and Shockley seems to me and Rinks and all the others, they set out real clearly what the elements are, and they go into some detail about how one can draw an inference from the fact you're present and you didn't do different things, but the bottom line as I read them is they are committed to all the Rinks, all those cases, to the particular elements. Do you disagree with that? To an extent, because I think that, and I'll use the phrase that the court used in Borzacus, we look at the proscribed conduct and decide if that conduct would be prescribed as generic. The lesson of the categorical approach is, of course, that labels don't matter. We have to look and see how it actually applies, and some of these cases, by saying it applies to this conduct, it's tantamount to saying this crime covers this particular set of facts, and so we look at whether that conduct would apply to generic, even if the court is saying, but is reciting the elements that we would consider as generic, we have to look beneath that to see if the conduct would apply to generic aiding and abetting. So we have held it, it's not a published opinion, but in 2018, we indicated that the elements of this particular Georgia party and crime statute are very close to what Section 2 would decide under Rosemont. So I gather your argument is not so much that there's anything wrong with the statute, the Georgia statute looks fine on its face. You're saying that you've found some appeals cases that you think maybe narrow that in a way or broaden that in a way, and your real basis is on this case law. Am I understanding you correctly? That's correct, because I can't just rely on a legal imagination, so I'm focusing on the cases that I think demonstrate an overbreadth on the part of that law. All right, thank you. Thank you. Thank you. Good morning, Your Honors. John Raymer on behalf of the United States. May it please the Court. For the three issues today, I'll begin where we left off with the Georgia burglary issue. Now, the only way for the defendant to prevail on his ACCA claim here is if he has shown a realistic probability that Georgia's aiding and abetting liability is an outlier compared to most other states. And the defendant here has not remotely made that showing for at least two reasons. First, in Duenas-Alvarez, the Supreme Court cited the very statute at issue here, Georgia's party to a crime statute, 16-2-20, in both Appendix A and Appendix C, as part of the baseline against which California's aiding and abetting law was measured. Now, I think that provides strong evidence that Georgia law is well within the mainstream when it comes to aiding and abetting liability. And second, all the defendant has really done here is pointed to Roseman, which interprets federal aiding and abetting liability under 18 U.S.C. Section 2. Now, I'll explain why we think that argument fails on its own terms, but I first want to point out that even if he were able to show that Georgia law is somehow out of step with federal aiding and abetting liability, that is not the test that Duenas-Alvarez articulated for analyzing generic offenses. Instead, Duenas-Alvarez makes clear that when dealing with a generic offense, the relevant baseline is liability in most other states. But even assuming that Roseman were the relevant comparator here, defendants' three arguments fail for three separate reasons. First, Georgia law requires the same types of affirmative acts that suffice under both Second, both the Georgia statute and Georgia case law require a mens rea of intent for aiding and abetting liability, which is over and above what the court blessed in Bortzakis. And third, Georgia's natural and probable consequences doctrine was cited as an example of the baseline in Duenas-Alvarez. Now, I'll specifically address the two cases that the defendant flagged here at argument, which are Shockley and Cash. The defendant says that Shockley is an example that no affirmative act is required under Georgia law, but Shockley is entirely an intent case. There, the defendant appealed only that the evidence did not support a finding that he had the relevant criminal intent for the purposes of aiding and abetting liability. So Shockley tells us nothing about what sort of affirmative acts are required under Georgia law. This is Judge Newsom. Even if it wasn't presented, you don't deny that Shockley affirmed the conviction in which there was really no affirmative act, right? No, Your Honor, I don't necessarily agree with that. I think in Shockley you have an example of a defendant in the principle getting into the car with a victim who is then found, you know, killed behind the wheel minutes later. So I think there's enough there to support a finding of an affirmative act. And I think that Rinks, a case that the defendant relies upon, does a good job of articulating Georgia law with respect to affirmative acts. And there are three points I would make about Rinks. First is that Rinks says that mere presence and mere approval are not enough. Second, Rinks acknowledges, consistent with both Roseman and LaFave, that in certain factual circumstances, assistance for purposes of aiding and abetting liability can be rendered through presence. In Roseman, the court said that Section 2 prescribes any assistance rendered by presence. And in LaFave, LaFave discusses situations where the defendant had a prior relationship with the principal, was in the immediate proximity to the crime, but did nothing to stop it, and that would be sufficient. I don't think Rinks does anything outside of that, let alone does Rinks extend significantly beyond the liability in most other states, which is what Bortzakis and Duenes-Alvarez require. And third, as I've already answered about Shockley, the defendant has pointed to no Georgia case where a defendant has actually been deemed liable for aiding and abetting without performing an affirmative act as contemplated in Roseman nor LaFave. So let me ask, I'm sorry, go ahead. You were going to address Cash. Yes, Your Honor. So Cash is a necessary and probable consequences case. Cash is not about the requisite mens rea for aiding and abetting a crime. And I think to recognize that distinction, it's helpful to recall that the necessary and probable consequences doctrine only comes into play when you have two crimes, a target crime and then a subsequent crime. And for the target crime, standard aiding and abetting principles apply, so the defendant must have the requisite mens rea. And that was effectively uncontested in Cash. The defendant actually admitted he intended to commit the target crime because that was his whole defense. When the natural and probable consequences doctrine comes in, it's when there's the subsequent crime, and we're going to ask whether the subsequent crime was the foreseeable consequence of the target crime. And we know from Duenas-Alvarez that there's natural and probable consequences doctrine is sufficient under the categorical approach and under that case. And I think you can especially see this when you compare Cash to the California case Montez, which the Supreme Court approved in Duenas-Alvarez. The cases are very similar in the sense that the defendant had the requisite mens rea for the target crime. The defendant argued that he could not be held liable for the subsequent crime because he didn't know the principal had a gun. And in both cases, the court said that because the target crime was an assault, a certain type of assault, and because the subsequent crime was reasonably foreseeable even with the use of a gun, it does not matter that you did not subjectively know that the principal had a gun. And I think the cases are identical. And I think combining all of that with the fact that the Supreme Court relied on Georgia law, cites the party to a crime statute in three Georgia cases in Appendix C in Duenas-Alvarez, is strong evidence that Georgia is well within the mainstream when it comes to aiding and abetting liability. I guess Borzacus changed your argument a little bit. You didn't address it in your brief, but now I guess you're addressing this party to a crime argument in ways that you did not before Borzacus came out. Well, I think that's correct, Your Honor, because we filed the briefs before Borzacus, which is why we filed the 28-J about Borzacus. But your argument was, we don't need to address this party to a crime argument. And now, that was what I understood. And now you recognize that you do, that we do. Well, I think we, Your Honor, in our brief, I think we made a few arguments. One was, yes, a large part of the brief was that you didn't need to address party to a crime. We did also argue that even if party to a crime was relevant, it wasn't broader, and we compared it to Rosamond, which is what the defendant was comparing it to. So we did make the argument that Georgia's aiding the betting liability was not special in some way. And then Borzacus does make our first argument potentially more difficult, but we think we easily prevail under Borzacus, and that's why we're pushing that argument here today. And it's really the only way the defendant could prevail on a DACA claim. But as I explained, he hasn't made the requisite showing, which is that Georgia aiding the betting liability extends significantly beyond most other states. So this is Judge Newsom. Am I wrong in thinking that sort of the logical import of Coates' argument here is that, you know, if Borzacus, as Borzacus says, that this party to a crime statute is sort of baked into every crime in Georgia, that no crime could be an ACCA predicate if he's right about the last subsection of the party to a crime statute? Your Honor, I think if the defendant had made the showing that Georgia law extended significantly beyond and he was correct, then I think for the enumerated offenses in ACCA, that would be the consequence of his argument here. But we don't think he's shown that, and therefore we don't think that that's... We don't think he's shown that the liability extends significantly beyond, which is what's required. Unless there are further questions on the burglary issue, I'm going to turn to the Rae Haif issue and explain why the defendant's unpreserved Rae Haif error does not satisfy the plain error standard, specifically with respect to the third and fourth elements of plain error review. Well, so this is Judge Newsom. I actually think that you ought to address his main argument, which is that I don't have to do the third and fourth elements of plain error under Bousley, or Bousley, or however you pronounce it. Absolutely. So, Your Honor, Bousley merely establishes that there was an error. Bousley does not necessarily go to prejudice, and so we disagree with the defendant that the error here is structural or is subject to automatic reversal. I would note that even if the court were to label the error structural, which I'll explain why we disagree with that, the defendant still could not satisfy all four elements of plain error review given the overwhelming evidence here. And I think the Supreme Court's decision in Cotton is illustrative where the court assumed that the failure to include an element in an indictment was structural, assumed that it satisfied the third element of plain error review, but then nevertheless said it did not satisfy the fourth element given the overwhelming evidence. But as to why this error is not structural, the Supreme Court has never deemed an error like this one to be structural. It does not fit within any of the three rationales the court has used. The defendant relies extensively on the idea of the autonomy interest, but the autonomy cases, the autonomy structural error cases, were protecting the interest of the defendant having the final say, having the up or down vote on a particular question. And indeed, the court says the right at issue in the autonomy cases is not to protect the defendant from an erroneous conviction, but instead protects another interest. Here, the error is to protect the defendant from an erroneous conviction. So we think it's subject, it does not fit within the autonomy cases, and I think an example of that is, you know, Gary got there, Gary found that the error affected the autonomy interest by extending the autonomy cases to making an informed decision. But the problem is that that's not the interest that's protected by the autonomy case, and I think an example of that is McCaskill, where the defendant needed to have the right to choose to self-represent. Now, if most defendants were making an informed decision, they wouldn't choose to self-represent because the chances of success would be much greater when represented. Therefore, that's not the interest protected by the autonomy cases, and therefore the error here, which goes to protecting the defendant from an erroneous conviction, does not make it a structural error under the autonomy cases. And we also think the error is easily measurable, as this court has done in Reed and in unpublished cases, applying Reed to guilty pleas, and also in cases applying Dominguez-Benitez of measuring whether the error affected the defendant's decision to plead guilty. And finally, we don't think that the error here is fundamentally unfair because, as Nieder makes clear, for a structural error, the error must be unfair in every single context that the error is made, whereas here, we do not think it would be unfair to hold a defendant to a guilty plea where he cannot make any showing that the error had any effect whatsoever on his decision to plead guilty. So let me just ask you a quick question just to make sure I'm understanding Dominguez-Benitez correctly. So I thought that Dominguez-Benitez said, you know, one critical difference between your standard Rule 11 case and your sort of unconstitutionally unknowing and involuntary case is that in the former, you have to show prejudice, in the latter, you don't. And then I thought Bousley sort of says, you know, an unknowing and involuntary plea is a constitutional error. So why not knitting Dominguez-Benitez and Bousley together? Don't you get to the point that this is the sort of error, if plaid properly, that doesn't require a showing of prejudice? Your Honor, I make two responses. I'll first respond to the point about Bousley. Just because the error is unconstitutional does not take it out of Rule 52. The Supreme Court has made clear that constitutional errors are still subject to plain error review. So Bousley only suggests that there's an error here. It only suggests that there's an error here, not what we do when the error is not objected to in the plea proceeding. Now, as for Dominguez-Benitez, specifically footnote 10, which is what the defendant principally relies upon, footnote 10 is discussing Boykin, and we think that the proposition in that footnote is that there can be circumstances where there is some error that is so extreme in the plea proceeding that the court would vacate the plea. And the example that's given in footnote 10 and in Boykin is when the record says absolutely nothing about the defendant's knowledge with respect to the rights he was waiving. There's no record upon which the court can conduct plain error review. And we think there can be circumstances in plea proceedings where the error is so extreme that the court would not conduct plain error review, but that's not this case, where the defendant cannot show or hasn't even suggested that he could show a reasonable probability that the error had any effect on his decision to plead guilty. And because it's a case-by-case analysis, when it comes to this type of error, we think it's therefore not structural. And once you look at the record here, the defendant can't establish the four elements of plain error review. Mr. Raymond, before you sit down, Mr. Dodson says that we review Judge Treadwell's denial of acceptance of responsibility under de novo review. Can you address that argument? Yes, Your Honor. I don't think that's correct. I think that the guidelines say that district court's decision is entitled to substantial deference. This court has seemingly equated the denial of the acceptance of responsibility with clear error, so I do not think it's de novo to whether this particular case constitutes an extraordinary case. Now, of course, it would be to interpret what the word extraordinary means, but when it comes to deciding whether the facts here constituted the extraordinary case so as to warrant the acceptance of responsibility despite the obstruction enhancement, we think that's a factual inquiry entitled to substantial deference, and this court has seemingly equated that with clear error. And the defendant has not shown that here. Thank you. Unless Your Honors have any other questions, I see that I'm about to run out of time. We would ask the court to affirm. Thank you. I first want to just address a couple of arguments that the government made. One is in the ACCA issue. I've not only relied on Rosamond. I did include a 50-state survey and the model penal code. I think Rosamond is a good example of generic aiding and abetting, but that's not the sole basis for finding it's generic. A majority, I believe, of the state jurisdictions also require an intent that goes to the specific crime in an affirmative act. As to the affirmative act, the case shockingly that I cited and a number of other cases in my brief, what it shows is mere presence, and I think that we need more than presence to show that someone... It has to actually further the crime, and I don't believe that mere presence does in Shockley and in a number of other cases. Let me ask you a quick question about Shockley, because Shockley, I think, frankly, is probably your best case on the affirmative act issue. But do you dispute the government's contention that Shockley was not a case in which the affirmative act issue was presented, that it was presented as an intent case? I'm not sure if I agree with that, but I would say that the issue that was raised, more broadly speaking, this is sufficient to the evidence, and the court has an obligation to determine in all respects that the evidence is sufficient before affirming that. As for the consequences, of course, it would be up to the Georgia legislature or Congress to amend something, but I think the law dictates that the Georgia party to a crime is broader than generic aiding and abetting. If I can move on to the Rehase issue, the government cited Cotton as an example of structural error, and I want to be clear, I'm not saying the fourth prong doesn't apply to structural error. I think I agree that Cotton said it does, but Cotton's a very different type of error. In Cotton, at least there, the judge made a finding as to the quantity of the drugs, and here, like as in Henderson, there was no finding and there was no voluntary admission of Rehase knowledge, so the conviction rested on nothing as to that element. So I think that distinguishes Cotton, and I think that the fourth prong should require this court to exercise its discretion because it is fundamentally fair in every case to attribute to a guilty plea an admission that wasn't made, and that's different than Nieder, where what was involved is a jury instruction. Nieder, again, a jury instruction is sort of a classic trial error that can be measured against the record, and this has to do with a defendant's voluntary admission. I don't agree that voluntary admission is about avoiding an erroneous conviction. I think that that is something that is fundamental to due process, that a person cannot be convicted on an admission that they didn't make, that is involuntary, regardless of whether it would go towards an erroneous conviction or not. So if there aren't any other questions, I will rest. Thank you, Mr. Johnson. That was a very well presented case for both sides. We appreciate your assistance with it. Thank you.